Filed 9/28/22  In re Hanna F. CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re HANNA F. et al., Persons Coming Under the Juvenile Court Law. | B318995 |
| | (Los Angeles County Super. Ct. No. 18CCJP03887C/D) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
| Plaintiff and Respondent, | |
| v. | |
| S.F., | |
| Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Tara L. Newman, Judge.  Affirmed.

Gina Zaragoza, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, Acting County Counsel, Kim Nemoy, Assistant County Counsel, and Sally Son, Deputy County Counsel, for Plaintiff and Respondent.

―――――――――――――

Saulo F. (father) appeals from the juvenile court's order that terminated parental rights to his children: Hanna (born 2015) and Rachelle (born 2016). He contends the order terminating his parental rights at the March 7, 2022, permanency planning hearing must be reversed because the beneficial parent-child exception applies.

At the hearing, the juvenile court found father did not meet his burden to show this exception applies. We agree and affirm the juvenile court's orders.

## BACKGROUND

**Three petitions have been filed to seek relief for the children under welfare and institutions code section 300[1]**

We draw some of the following facts from our earlier opinion where we affirmed the juvenile court's orders at the adjudication and disposition hearing on June 22, 2020. (*In re Hanna F.* (Apr. 5, 2021, B306708) [nonpub. opn.].) At that hearing, the juvenile court declared the children dependent and ordered them to be suitably placed.

This appeal concerns the third section 300 petition filed on behalf of the children. The Los Angeles County Department of Children and Family Services (DCFS) filed the first petition in

―――――――――――――

[1]     All further statutory references are to the Welfare and Institutions Code, unless otherwise noted.

November 2016 and alleged the children were endangered by the mental health issues of H.B. (mother).[2] The juvenile court assumed jurisdiction over the children, who were released to father in May 2017.

DCFS filed the second petition in June 2018 and alleged the children were endangered by (1) mother's history of mental and emotional problems; (2) mother's failure to seek treatment; (3) father's use of methamphetamine, amphetamine, and alcohol; and (4) father caring for the children while he was under the influence of alcohol. The juvenile court sustained the petition against both parents and placed the children in mother's home with family maintenance services. The juvenile court terminated jurisdiction in August 2019 with a custody order granting mother sole legal and physical custody of the children and granting father monitored visitation.

DCFS filed the third petition on November 5, 2019, and alleged that mother had left the children alone at a church without making a plan for their ongoing supervision. DCFS alleged that mother was unable to provide regular care and supervision for the children because she had a history of mental and emotional problems. At the detention hearing the next day, the juvenile court placed the children in the care and custody of DCFS and ordered that father could have monitored visitation.

**Disposition of this third petition**

DCFS reported throughout the proceedings in the juvenile court that mother's location was unknown. She was reported by father to be unstable in a June 2, 2020 interview with a DCFS social worker. Father added that his monitored visits had stopped

---

[2]     Mother is not a party to this appeal.

because mother would not respond to his telephone calls. Father wanted custody of the children.

Based on father's ongoing struggles with his substance use disorder, DCFS filed an amended petition on February 21, 2020, to add a count that the children were at risk due to father's history of substance abuse, failure to comply with the juvenile court's previous dependency orders, and failure to reunify with the children. DCFS also filed a last minute information for the court document stating that the children's maternal grandfather had expressed interest in caring for the children. DCFS then placed the children in the maternal grandfather's home.

### *Father's efforts to address his substance use disorder*

Father enrolled at Clinica Romero in November 2019 to seek treatment for his substance use disorder and submitted two negative drug tests in December 2019. Father stopped participating in February 2020 and stated he was not interested in participating in a substance abuse program because he had no need and the court had not ordered him to attend a program. The director of Clinica Romero stated in a letter dated April 17, 2020, that father had enrolled in a six-month program in November 2019, but was discharged on March 16, 2020, because he had not complied with the agency's rules.

In a telephone interview on June 5, 2020, father was asked when he last consumed methamphetamine, amphetamine, and alcohol. Father replied to each inquiry, "No comment." Father added, "That's a past issue. I'm not using drugs." When asked why the court's August 26, 2019 order granted mother sole legal and physical custody of the children and monitored visits for him, father stated that the court was biased.

4

Father's random drug and alcohol test results from December 6, 2019, through May 26, 2020, showed four negative tests and eight missed tests. Three of the missed tests were excused because the testing site was closed due to the COVID-19 pandemic.

### *Father's visits with the children*

At first, father consistently visited the children. His visits were less consistent after the first month. Further, the children's caregiver stated father was "short-tempered and easily angered" during the visits. The caregiver also expressed concern about father's attitude towards the caregivers and stated father had been rude, such as stating "fuck you" to the caregiver and ending phone calls abruptly. The children overheard these calls because they were on speaker.

The caregiver also noted that father would yell at the children when they referred to her as "mom." She added that father regularly spoke poorly of DCFS. The caregiver felt nervous when father called and was considering asking that the children be placed in another home due to father's actions.

After DCFS placed the children with the maternal grandfather on May 22, 2020, matters improved. Father had monitored visits with the children at a local park. The maternal grandfather reported that the children had not disclosed any concerns regarding the visits with father, and they did not show any signs of distress after the visits. Father engaged in age-appropriate play with the children and provided snacks. The children appeared happy during the visits.

**Adjudication and Disposition Hearing**

On June 22, 2020, the juvenile court held a combined adjudication and disposition hearing. Counsel for the children

5

joined with DCFS to request that the petition be sustained in its entirety. The children's counsel argued that father had been discharged from the drug treatment program for failing to attend the program, that father had missed drug tests, and that father's claim that his drug problem was in the past showed he was not acknowledging the problem.

Father's counsel asked the court to dismiss the count against father on the ground that the drug program had closed due to the pandemic. But father's counsel conceded that father had failed to enroll in the telephonic services offered by the program. Father's counsel pointed out that there was no suspicion of father being under the influence during the present case.

The juvenile court sustained the DCFS petition in its entirety based on findings that father had failed to complete a drug program or submit to drug tests. The juvenile court added that father had failed to address the issues identified in previous petitions that had caused father to lose custody of the children.

The juvenile court declared the children to be dependents, ordered that they be suitably placed, and directed that the parents receive family reunification services. Father was ordered to participate in a drug and alcohol program and to submit to random tests for drugs and alcohol.

Father appealed. On April 5, 2021, we affirmed the juvenile court's orders because we found that substantial evidence supported the juvenile court's finding that Father's unresolved drug abuse issues placed the children at substantial risk of harm. (*In re Hanna F., supra*, B306708.)

## Termination of reunification services and permanency planning hearing

The children remained in the care of a maternal grandfather and uncle, where they were thriving. The children were reported to be bonded to the maternal grandfather, grandmother, and uncle. Their teachers gave positive reports of the children and their therapist terminated therapeutic services while the children were in the maternal grandfather's care because she had determined the children were doing better and did not need further services.

Mother's location continued to be unknown. Father consistently met the children during monitored visits. Father had been ordered to participate in a six-month drug and alcohol program that included aftercare and random tests for drugs and alcohol.

After six months, the juvenile court held a review hearing and ordered that father receive additional family reunification services. At the 12-month review on April 16, 2021, however, reunification services were terminated. The juvenile court found that the return of the children to father would create a substantial risk of detriment to the children and that father had not made substantial progress to alleviate or mitigate the causes necessitating placement. Father had been discharged from his drug treatment program because he had not participated or submitted to testing.

The juvenile court set a permanency planning hearing for August 12, 2021. The hearing was continued to December 9, 2021, and then March 7, 2022.

Father continued his weekly, monitored visits with the children. The maternal uncle reported no concerns about the

visits, and the children looked forward to seeing father. However, the children did not appear to seek additional visits with father.

At the permanency planning hearing on March 7, 2022, counsel for the children requested that parental rights be terminated because the children were adoptable and no exceptions to adoption existed. Counsel for father argued that the beneficial parent-child exception applied. The juvenile court disagreed and found that father had not established the beneficial parent-child exception. The court then found that the children were adoptable and terminated parental rights.

Father timely filed a notice of appeal on March 9, 2022.

## DISCUSSION

### I.  Applicable law and standard of review

Once a juvenile court has terminated reunification services and determined that a child is adoptable, the court is required to terminate parental rights unless it finds an applicable exception. (§ 366.26, subd. (c)(1).) The exception at issue here, sometimes referred to as the beneficial parent-child exception, applies when "[t]he court finds a compelling reason for determining that termination would be detrimental to the child" because "[t]he parents have maintained regular visitation and contact with the child and the child would benefit from continuing the relationship." (§ 366.26, subd. (c)(1)(B)(i).)

The parent bears the burden of proving that the exception applies. (*In re L. Y. L.* (2002) 101 Cal.App.4th 942, 952-954.) To do so, the parent must prove three statutory elements: "(1) regular visitation and contact, (2) a relationship, the continuation of which would benefit the child such that (3) the termination of

8

parental rights would be detrimental to the child." (*In re Caden C.* (2021) 11 Cal.5th 614, 631 (*Caden C.*).)

For the first element, visitation, the question is simply whether the parent consistently visited, as permitted by court orders. The focus is not on punishing or rewarding parents for their behavior in visiting or maintaining contact, but on the best interests of the child. (*Caden C., supra*, 11 Cal.5th at p. 632.)

As to the second element, whether the child would benefit from continuing the relationship, "the parent must show that the child has a substantial, positive, emotional attachment to the parent—the kind of attachment implying that the child would benefit from continuing the relationship." (*Caden C., supra*, 11 Cal.5th at p. 636.) The parent must also show that "the relationship promotes the well-being of the child to such a degree as to outweigh the well-being the child would gain in a permanent home with new, adoptive parents." (*In re Autumn H.* (1994) 27 Cal.App.4th 567, 575 (*Autumn H.*).) Relevant factors in assessing the parent-child relationship include "[t]he age of the child, the portion of the child's life spent in the parent's custody, the 'positive' or 'negative' effect of interaction between parent and child, and the child's particular needs." (*Id.* at p. 576.)

For the third element, whether termination would be detrimental to the child, the court must determine "how the child would be affected by losing the parental relationship—in effect, what life would be like for the child in an adoptive home without the parent in the child's life." (*Caden C., supra*, 11 Cal.5th at p. 633.)

We review the juvenile court's findings concerning visitation and whether the child would benefit from continuing the relationship with the parent for substantial evidence.

9

(*Caden C., supra*, 11 Cal.5th at pp. 639-640.) Whether termination of parental rights would be detrimental to a child because of the child's relationship with the parent is a question we review for abuse of discretion. (*Ibid.*)

## II.    Analysis

Father had the burden of establishing three elements: (1) regular visitation and contact; (2) a substantial, positive, emotional attachment by the children to him—the kind of attachment implying that the child would benefit from continuing the relationship; and (3) a showing that terminating the attachment would be detrimental to the children even when balanced against the countervailing benefit of a new, adoptive home. (*Caden C., supra*, 11 Cal.5th at p. 631.)

The juvenile court found that father met his burden of showing consistent visitation with the children, thus meeting his burden of proof on the first element.[3]

### A.    *Substantial evidence supports the court's finding that the children did not have a substantial relationship with father*

Substantial evidence supports the juvenile court's finding that Father did not meet his burden of establishing that the

---

[3]    The March 7, 2022, minute order states on page 2 that "[t]he Court finds that the parent has not maintained regular visitation with the child . . . ." However, neither party asserts this finding is correct. Indeed, DCFS states on page 28 of its brief that "the juvenile court found that father had visited consistently . . . ." When there is a conflict, the record of the oral pronouncement of the court controls over the clerk's minute order. (*People v. Farell* (2002) 28 Cal.4th 381, 384, fn. 2.) Thus, we follow the reporter's transcript and the finding that father had been consistently visiting the children.

children shared a substantial, positive, emotional attachment with him.

At the section 366.26 hearing, Father referred to the "January 28th RPP" and the "July 26 report"[4] to show that the children enjoy his visits, the children behave normally after his visits, and the children look forward to his visits. The juvenile court found that this evidence showed father had positive visits with the children; however, the court found he failed to establish the beneficial parent-child relationship or that termination of the parental rights would be detrimental to the children. The court found that father had not established that a bond existed between him and the children.

Under the applicable standard of review, we must uphold the juvenile court's findings if, on the entire record, there is substantial evidence to support those findings. We do not reweigh the evidence; rather, we draw all reasonable inferences in support of the findings and view the record in the light most favorable to the juvenile court's order. (*In re Megan S.* (2002) 104 Cal.App.4th 247, 251.)

To determine if this attachment exists, we apply the factors set out in *Caden C.*: (1) the age of the child, (2) the portion of the child's life spent in the parent's custody, (3) the positive or negative effect of interaction between the parent and the child, and (4) the child's particular needs. (*Caden C., supra*, 11 Cal.5th at p. 632.) "The significant attachment from child to parent results from the adult's attention to the child's needs for physical care, nourishment, comfort, affection and stimulation. [Citation.]

---

[4] There is no July 26 report. Based on the reference to facts showing the children refer to Saturday visits on page 10 in the report, father was referring to the RPP filed on July 27, 2021.

The relationship arises from day-to-day interaction, companionship and shared experiences." (*Autumn H., supra*, 27 Cal.App.4th at p. 575.)

An example of the showing that establishes a beneficial parent-child relationship is in *In re E.T.* (2018) 31 Cal.App.5th 68. There, four-year-old twins lived with their mother for 22 months and a typical day involved the mother getting them up, making them breakfast, taking them to school, picking them up after school, preparing dinner, and reading to them before bed. (*Id.* at pp. 73-74.) This indicated that the children had developed a substantial bond with their mother during the portion of their life spent in her custody.

After the children were detained, the mother brought food to them every visit because she knew the children were hungry after a long day at school. (*In re E.T., supra*, 31 Cal.App.5th at pp. 73-74.) She played games, talked, and ate with them because she missed feeding them. (*Ibid.*) The children smiled when they saw her. (*Ibid.*) She knew they might be anxious and would try to ease their anxiety, such as by playing peekaboo when she first saw them. (*Ibid.*) The children would hold her hand or spontaneously hug her. (*Ibid.*) The mother provided the children comfort and affection, and she was able to ease their fear and anxiety. (*Id.* at p. 76.) Following visits with the mother, the children would sometimes be sad, withdrawn, and might act out. (*Ibid.*)

There was no similar evidence here to show father had a substantial, positive emotional relationship with the children. Rather, father's evidence showed he had consistent visits and the children enjoyed the visits. There was also evidence that when father had custody of the children, he endangered their physical

health and safety and placed them at risk of serious physical harm, damage, and danger. Father slept during the day when he was supposed to be caring for the children; he left the front door open while sleeping; he gave the children too much candy and ice cream; he was constantly on his phone; he left the children too long in the highchair.

Father asserted, "I am very close to my daughters," as evidence of his bond with them. But the appropriate focus is on the children's bond with father. Father did not meet his burden of showing the children had developed a psychologically or emotionally significant relationship with him when he had custody.

Nor did father provide evidence showing that the necessary relationship was established after the children were removed from him. The record showed he made regular visits from November 6, 2019, when the juvenile court placed the children in the care and custody of DCFS, that the children enjoyed the visits and looked forward to them, and that the children behaved normally after the visits.

But the children's enjoyment of their visits with father is not sufficient to establish the beneficial parent-child relationship. (*In re C.F.* (2011) 193 Cal.App.4th 549, 555 [loving contact or pleasant visits are not sufficient to show a significant, positive, emotional attachment between child and parent].) There was no evidence that father's interactions with the children had positive effects or met the children's particular needs. (*Autumn H., supra*, 27 Cal.App.4th at p. 576.)

Father also noted that during a monitored visit in December 2019, the assessor observed that one child acted with confidence near father, was receptive to his attention, and

13

"exhibited a strong bond" with father. This visit occurred soon after DCFS took custody of the children in November 2019; however, there is no evidence that this bond was enduring or that it continues to exist in 2022.

Instead, the more recent evidence showed that the children's attachments are to their maternal grandparents, who are the prospective adoptive parents. The grandparents are meeting the children's needs. The children have bonded with their grandparents and see them as their family. There is no evidence that the children had a concurrent substantial, positive emotional bond with father.

Father argues that the DCFS's social workers did not question the children about their visits with father. It was not DCFS's burden to show that the beneficial parent-child exception existed. Father had the burden to show "the child would benefit from continuing the relationship." (§ 366.26, subd. (c)(1)(B)(i).) He failed to do so.

Drawing all reasonable inferences in support of the juvenile court's findings and viewing the record in the light most favorable to the juvenile court's order, substantial evidence supports the juvenile court's finding that father failed to establish a beneficial parent-child relationship.

**B.** ***Substantial evidence supports court's finding that the benefits of adoption outweigh the detriment of terminating the parental rights***

Father also had the burden of showing that terminating his parental rights would be detrimental to the children when balanced against the countervailing benefit of a new, adoptive home. (*Caden C., supra*, 11 Cal.5th at p. 636.) The benefits of adoption include the security and sense of belonging that a new

14

family would confer. (*Autumn H., supra*, 27 Cal.App.4th at p. 575.)

The juvenile court found that father had failed to establish that the termination of father's parental rights would be detrimental to the children. The minute order added that "any benefit accruing to the child from his/her relationship with the parent(s) is outweighed by the physical and emotional benefit the child will receive through the permanency and stability of adoption, and that adoption is in the best interests of the child." Substantial evidence supports that finding.

The prospective adoptive parents are the children's maternal grandparents. The record shows that the maternal grandparents were committed to meeting their needs and to providing them with a safe, stable, and permanent home. The children have been with the grandparents since May 22, 2020, are thriving in their care, and interacting well with them. An assessment showed that the children had "a great bond with the caregivers," who want to give the children a normal, loving, and safe home.

Father offered no evidence showing the measure of detriment the children would suffer from the loss of the relationship with him. Or that this loss outweighed the security and sense of belonging that they would enjoy in an adoptive home. He accordingly failed to meet his burden of showing that the detriment of terminating his relationship with the children outweighed the benefits that the maternal grandparents would provide in a stable and permanent home for the children.

The juvenile court did not err when it found the beneficial parent-child exception did not apply.

## DISPOSITION

The order terminating parental rights is affirmed.

_____

CHAVEZ, J.

We concur:

_____

LUI, P. J.

_____

HOFFSTADT, J.